Bogie vs. Bogie and another.

*By the Court.* — Judgment affirmed.

## Bogie vs. Bogie and another.

DEED. *(1) Condition subsequent.*

EQUITY. *(2) Rule as to rescission of conveyance, etc. (3) Case stated. (4) Rights of third parties.*

1. A. deeded land to B., and on the same day both parties executed a sealed instrument, which recites the fact of such conveyance, and declares that

| 41 | 209 |
| 74 | 10 |
| 41 | 209 |
| 77 | 445 |
| 41 | 209 |
| 78 | 598 |
| 41 | 209 |
| 86 | 661 |
| 41 | 209 |
| d95 | 438 |
| 41 | 209 |
| 98 | 202 |
| 41 | 209 |
| 99 | 483 |
| 41 | 209 |
| f102 | 499 |
| 41 | 209 |
| e113 | ¹313 |
| 113 | ²314 |
| 113 | ²315 |
| e113 | ²318 |
| 113 | ²319 |
| 113 | ²320 |
| o113 | ²321 |

Bogie vs. Bogie and another.

B. agrees to maintain A. during his natural life, furnishing him food, clothing, medicine and nursing while sick, and medical services, etc., and to pay, six months from A.'s decease, certain sums to certain named persons; and it is declared that "the covenants herein contained shall bind the parties mutually, and their respective heirs, executors, administrators and assigns." *Held*, that, construing this instrument and the deed together as one transaction, they do not create any condition subsequent, failure of which will work a forfeiture of title in B.

2. Courts of equity have power, in proper cases, to rescind conveyances and agreements, and will grant such relief when necessary to prevent a fraud upon the party seeking it; and will especially protect in this manner aged and infirm persons who have conveyed property to their children in consideration of support and maintenance, where the grantees neglect to perform their duty in that respect.

3. It is alleged, in substance, that plaintiff, being infirm in health and advanced in age, etc., conveyed lands to his son in consideration of the promise of the latter to make provision for plaintiff during his natural life, and pay certain sums to plaintiff's other children, as stated in the agreement above described; that the son entered upon and has continued in possession of the lands under the deed, but "has utterly failed to perform, in whole or in part, any and all" of his said covenants, "by failing and neglecting in all respects to support and provide food and clothing, and medicine and medical attendance when sick," for the plaintiff. *Held*, that a cause of action is stated for a rescission of the conveyance and agreement; and it is not necessary in such a case to allege a *demand* of food, medicine, etc.

4. One who took a conveyance from the son of a portion of said land, with knowledge of plaintiff's equities and without paying any consideration, has no greater rights than his grantor, against the relief sought.

APPEAL from the Circuit Court for *Jefferson* County.

The complaint alleges that on the 21st of November, 1872, and for a long time previously, the plaintiff was the owner in fee simple and in possession of certain lands therein described. It then proceeds as follows: "This plaintiff further shows that on the said 21st day of November, 1872, he was infirm in health, and advanced in age, and was desirous of making such a disposition of his property and effects as would secure sufficient support and maintenance, in health or sickness, during the remainder of his life; and whereby he might be relieved from the labor, care and anxiety of looking after and

superintending his farm and stock; and also to provide, during his lifetime, for the distribution of his estate after his decease; and that, in pursuance of such desire and intention, plaintiff did, at divers times, confer with the defendant *John Bogie*, who is his son, upon all the matters above set forth, and did agree with defendant *John Bogie* that he should have a deed to said land, and should secure to the plaintiff his necessary provisions for food and clothing and medicine and medical attendance, and, upon the decease of plaintiff, defendant should, within six months thereafter, pay to James Bogie three hundred dollars, and to Jennett Bissett two hundred dollars, and to Christine Lind two hundred dollars, all being children of plaintiff; and it was further agreed between plaintiff and defendant *John Bogie*, that, in case the said defendant *John Bogie* should, as herein set forth, maintain and support this plaintiff during his natural lifetime, and should pay the sums to the said James Bogie, Jennett Bissett, and Christine Lind as above set forth, then the title to the lands set forth in this complaint should vest in and be in defendant *John Bogie.* Plaintiff further shows that defendant did consent to all the covenants and undertakings above set forth, and that, in pursuance thereof, the plaintiff did, on said 21st day of November, 1872, cause to be made a warranty deed in fee simple of said lands herein before described, wherein he conveyed to defendant *John Bogie* the premises above described; and that plaintiff and his wife, Amy Bogie, duly executed and delivered the same to defendant *John Bogie*." A copy of such deed (which is in the usual form, and contains the usual covenants) is inserted in the complaint. The deed was recorded February 15, 1873.

It is further alleged that, at the time of the execution of the deed, the defendant *John Bogie* executed and delivered to the plaintiff an agreement in writing as follows: "This indenture, made the 21st day of Novemder, 1872, by and between *John Bogie*, of the town of Sullivan, county of Jeffer

son and state of Wisconsin, party of the first part, and *William Bogie*, of the same town, county and state, party of the second part, witnesseth, that the party of the second has this day sold to the party of the first part, the following described lands situated in the town of Sullivan, county of Jefferson and state of Wisconsin: The north three-fourths of the northeast quarter of the northwest quarter of section thirty-one (31), and the south half of the southeast quarter of section thirty-two (32), town six north, of range sixteen east, except that portion heretofore deeded by Jacob Mackey and wife to Lathrop Edwards and George Edwards; and it is agreed that the party of the first part agrees to maintain the party of the second part during his natural life, furnishing him food, clothing, medicine, nursing while sick, and medical services, etc.; and the party of the first part agrees to pay, six months from the decease of the party of the second, the sum of three hundred dollars to James Bogie, two hundred dollars to Jennett Bissett, two hundred dollars to Christine Lind, children of the said *Wm. Bogie;* and the covenants herein contained shall bind the parties mutually, and their respective heirs, executors, administrators and assigns.

"In virtue whereof the said parties have hereunto set their hands and seals the day and year first above written.

"In presence of

"RICHARD BOGIE,          JOHN BOGIE,    [SEAL.]

"JOSEPH MCCLERY,          WILLIAM BOGIE, [SEAL.]"

This agreement was acknowledged on the day it was executed, and was recorded on the 4th of January, 1876.

The complaint then proceeds as follows: "And the plaintiff further alleges that the said deed and the agreement were both part and parcel of the same contract, and were in fact one and the same transaction, and together constitute in law a condition subsequent, upon which defendant *John Bogie* held the estate in said lands heretofore described; and plaintiff avers that defendant *Bogie*, immediately after said deed was de-

livered, to wit, November 21st, 1872, entered into possession of the said lands, and has ever since occupied the same; and plaintiff further alleges that defendant *John Bogie* has utterly failed and neglected to perform, in whole or in part, [any?] and all of the covenants in the above agreement set forth and contained, by failing and neglecting in all respects to support and provide food and clothing, and medicine and medical attendance when sick, for said *William Bogie.* And plaintiff further alleges that by reason of defendant *John Bogie's* failure and neglect to perform and carry out the covenants contained in said agreement, defendant has forfeited his said estate in said lands."

It is further alleged that on the 2d day of August, 1875, the defendant *John Bogie* and his wife conveyed a considerable portion of said lands to the defendant *Joseph McClery,* who is the father-in-law of *John Bogie;* that such conveyance was without consideration; that *McClery* knew, when he took it, of the existence of the above agreement, and knew also that *John Bogie* held the lands upon a condition subsequent, and that such condition had been broken; that he is in possession of the lands so conveyed to him by *John Bogie* and wife; and that he holds and occupies the same under that conveyance and no other.

The prayer for relief is as follows: "Wherefore the plaintiff prays that an account may be stated between the parties to this action, of the rents, issues and profits of said premises, * * * for the time that the same have been so as aforesaid held and occupied by the defendants, and that defendants be adjudged to pay such profits to plaintiff; and for a decree of this court canceling the deed and written agreement set forth in this complaint, and also the above described deed from defendant *Bogie* to defendant *McClery*, and that the same and all of them be held for naught; and that plaintiff have restitution of all the said premises described in the complaint; and

for such other and further relief as may be agreeable to law and equity."

The defendants demurred to the complaint, upon the following grounds: "1. The complaint does not state facts sufficient to constitute a cause of action upon the equity side of the court.  2. It appears from the complaint that the plaintiff has a remedy at law, and that this action should not be maintained.  3. It does not appear that the plaintiff ever made any demand of aid or assistance from the defendant *John Bogie*, or that he was in a condition to receive it, or in need of it." From an order sustaining the demurrer, the plaintiff appealed.

For the appellant, two briefs were filed, one signed by *Bruett & Weymouth* as his attorneys, and the other by the same attorneys and by *L. S. Dixon* and *D. S. Wegg*, of counsel; and the cause was argued orally by *N. Bruett* and *L. S. Dixon:*

1. *At law*, the deed and contract did not create an estate upon condition subsequent; the deed was absolute, and the accompanying instrument merely a covenant on the part of *John Bogie;* and the only remedy at law is an action for damages for breach of this covenant. *Horner v. Railway Co.*, 38 Wis., 165; *Strong v. Doty*, 32 id., 381; *Rawson v. School District*, 7 Allen, 125.  *In equity*, where the son fails to furnish the support, the instrument will be canceled, and the parties placed in *statu quo;* because the remedy at law is wholly inadequate, and there is a total failure of consideration, and a fraud committed upon the rights of the parent; *Reid v. Burns*, 13 Ohio St., 49; *Jenkins v. Jenkins*, 3 Mon., 327; *Scott v. Scott*, 3 B. Mon., 2; *Leach v. Leach*, 4 Port. (Ind.), 628; *Devereaux v. Cooper*, 11 Vt., 103; *Schwear v. Haupt*, 49 Mo., 225; *Yoakum v. Yoakum*, 77 Ill., 85.  2. *McClery* had no constructive notice of plaintiff's rights either under the registry laws or by possession.  Actual notice and

the true consideration can be proven only by the testimony of the two defendants. Hence a bill in equity would lie for a discovery; and the court, having assumed jurisdiction, would go on and administer the appropriate relief. *Peck v. School District*, 21 Wis., 516; 1 Story's Eq. Jur., § 71. It is a fundamental principle, that where equity takes jurisdiction of a class of cases, such jurisdiction is never lost or impaired by the extension of the powers of common-law courts. Parties may now be examined in an action at law, but the powers of a court of equity remain the same, and therefore, whether this deed be one upon condition subsequent or not, a bill in equity will lie, and the relief demanded in this complaint be granted, if the facts proven warrant it. 3. The complaint does not expressly aver that the consideration mentioned in the deed was not the true one; but it does allege what the understanding between the father and son was, and that the deed and agreement were executed in pursuance of this understanding. These two instruments must be construed together, and the agreement be considered as the actual consideration for the deed. 4. At most, the failure to allege a demand in this case, like a failure to allege the demand of a deed in an action for a specific performance of a contract to convey, would only go to the question of costs; and not even this, if it appears from the testimony, that a demand would have been of no avail. In case of a condition subsequent at common law, a demand of performance, or notice of nonperformance, was never necessary; because the grantee was in such a position that he must already know that he had failed to perform.

*L. B. Caswell*, for the respondents:

The transaction was an absolute deed on the one hand, and a personal covenant on the other. The deed was given for the agreement, and the agreement for the deed. The grantee's personal covenant may be worth more than the land. There is no averment of his irresponsibility, nor of any effort to recover by proceedings at law or otherwise, nor even of a de-

mand for aid. Plaintiff therefore shows no case requiring the interference of a court of equity. *McKillipp v. McKillipp*, 8 Barb., 552; *Armstrong v. Pierson*, 5 Iowa, 317; *Merrifield v. Cobleigh*, 4 Cush., 178; 21 Ind., 462; 13 N. H., 9. There is no claim that the amount needed for the plaintiff's support shall be made a lien upon the land, and it is too late now to amend the complaint so as to make that claim. *Rasdall's Adm'r v. Rasdall*, 9 Wis., 379; *Rathbun v. Rathbun*, 6 Barb., 98; *Philbrook v. Delano*, 29 Me., 410; *Dean v. Dean*, 6 Conn., 285. No fraud or undue advantage in the original transaction is averred. The complaint alleges simply a breach of contract, in part, and claims that the deed should be canceled, without showing that the plaintiff has not a full and adequate remedy at law. Where the consideration of a deed is an agreement to do or not to do something, or to pay an unliquidated amount, and the personal covenant of the obligor forms the sole dependence of the obligee, there is no fixed amount to be made a lien on the land. *Arlin v. Brown*, 44 N. H., 102; *Clarke v. Royle*, 3 Sim., 499; *Buckland v. Pocknell*, 13 id., 406; *Parrott v. Sweetland*, 3 Myl. & K., 658; *Dixon v. Gayfere*, 17 Beav., 421; 21 id., 118; *Brawley v. Catron*, 8 Leigh, 522; 13 Gratt., 615; *McKillipp v. McKillipp*, 8 Barb., 552. If a lien cannot be fixed upon the land to secure the performance of the bond, still less, of course, will the court, in the absence of fraud, strike down the title entirely. 4 Kent's Com., 130; 18 Ves., 56; *Arlin v. Brown*, supra.

LYON, J. It will be observed that one theory of the action, as disclosed in the complaint, is, that the conveyance by the plaintiff to the defendant *John Bogie*, and the agreement of the parties executed at the same time, constitute a single transaction and have the same legal effect as though the terms of both were included in one instrument; and that the maintenance of the plaintiff by the defendant *John Bogie* is a

condition subsequent, the failure to perform which works a forfeiture of the lands conveyed. It was stated in the argument at the bar, that the learned circuit judge held the plaintiff to this theory of the case, and sustained the demurrer to the complaint on the ground that the plaintiff had an adequate remedy at law. And it is undoubtedly true that a grantor may maintain ejectment after the breach of a condition subsequent, to recover the premises conveyed subject to such condition. *Horner v. Railway Co.*, 38 Wis., 165, is such a case.

Considering the conveyance and agreement in the present case as a single transaction having the legal effect just mentioned (and such is doubtless their legal effect), we fail to find in either any clause or provision creating a condition subsequent. This will clearly appear if reference be had to the rules for determining the existence of such conditions laid down in *Horner v. Railway Co.*, which it is unnecessary here to repeat. There is nothing in either instrument showing that the parties thereto intended that the failure of *John Bogie* to maintain the plaintiff should work a forfeiture of the lands.

This brings us to inquire whether the action can be supported on any other ground. A portion of the relief sought is the rescission of the conveyance and agreement; and a court of equity has power, in proper cases, to grant such relief. The nature of this jurisdiction, and the cases in which it will be exercised, are so well and so accurately stated by SUTLIFF, C. J., in *Reid v. Burns*, 13 Ohio St., 49, that we feel at liberty to quote at some length from the opinion. He says: "The rescission, cancellation, or delivery up of agreements, securities or deeds, is said to be one of the heads of equity jurisdiction indispensable to reciprocal justice. It is the converse of a specific performance. The ground for the equitable relief, in either case, is the same. The equity arises from the fraud which the circumstances of the case show would be per-

petrated, but for such interposition of the court, upon the party asking such relief. In neither case can the relief be claimed by the party as his strict right; but in both cases, an application for specific performance, and an application for a rescission of a contract, or reconveyance of lands, securities, etc., the relief asked is granted or refused by a court of equity upon its own conclusions, from all the attending circumstances, that the relief is or is not just and reasonable in the particular case. It is said, too, that the plaintiff will be expected, in a court of equity, in such cases, to show himself entitled to relief beyond a mere technical breach of duty. The court will also, in some cases, order an indenture to be canceled or annulled, on the application of one party, when it would refuse similar relief on the application of another, showing very clearly that the court, in such cases, has an ample discretion. And still the discretion exercised upon such applications by courts of equity is not an arbitrary discretion; but it is said to be ' a sound and reasonable discretion, and regulated upon grounds that make it judicial.' The court, however, often considers, before granting it, whether the relief prayed would be attended with hardship or not; or whether a superior or inferior equity arises on the part of the applicant. See Story's Equity, §§ 692 et seq.; and Willard's Eq. Jur., 302 et seq.

" While it must be admitted that there is a remarkable dearth of reported cases upon the subject of rescission of contracts, and reconveyances of lands, the authorities referred to, and other elementary writers, very clearly show that it is only the exercise of the same power by the court, to decree a rescission or reconveyance that it is to decree a specific performance. In a proper case, a court of equity has the power to grant either form of relief; and without a proper case, the court will grant neither."

We are now to determine, in the light of these principles, whether the complaint before us alleges facts which, if true,

entitle the plaintiff to have his conveyance to his son and the agreement rescinded.

Conveyances of property by aged and infirm people to their children, in consideration of promised support and maintenance, are somewhat peculiar in their character and incidents, and must sometimes be dealt with by the courts on principles not applicable to ordinary conveyances. A person incapacitated by the infirmities of age for active pursuits naturally feels a strong desire to place the fruits of his industry and enterprise where they will secure to him during the remnant of his life a suitable and proper maintenance, without further care or labor on his part. One thus situated also naturally prefers to convey his property to his child for that purpose, and that his child, and not a stranger, should assume the obligation to maintain him. Paternal affection thus prompts him, and he relies upon the filial affection of his child for the faithful and cheerful performance of the obligation. And thus it is that when an aged and infirm father conveys his property to his son in consideration that the son shall care for and maintain him during the remainder of his life, elements enter into the transaction peculiar to such cases. Such a transaction on the part of the father is prompted often by necessity, always by affection for and trust in the son to whom he has transferred his means of support. Besides, the age and infirmity of the father may unfit him in a degree properly to protect his own interests, and may render him subject to imposition. Hence it is that we seldom find in such transactions evidences of that deliberation and careful regard to self-interest on the part of the father, which usually characterize ordinary business transactions of the same magnitude.

Because of these and other considerations peculiar to a case like this, it is the duty of the son, and he should regard it as his highest privilege, fully to perform his agreement. This is not only a moral and religious duty, but it is a duty

Bogie vs. Bogie and another.

of which a court of equity will take cognizance, and grant proper relief for its nonperformance.

The complaint alleges an entire nonperformance, by *John Bogie*, of his agreement to maintain his father. It is objected, however, that there is no averment of a demand for such maintenance. But what is the necessity for such demand? *John Bogie* knew that his father needed food daily, that he required shelter and clothing, and, when sick, nursing and medicine. He had been paid for furnishing these; and the spirit of his contract is that he should furnish them when needed, unasked, and with cheerful alacrity.

On the question as to what relief should be granted for the entire failure of *John Bogie* to perform his agreement, we have no doubt or difficulty whatever. The proper relief, to wit, the rescission of the conveyance and agreement, is prayed in the complaint. We should not hesitate so to hold on principle, in the absence of adjudged cases; but the cases cited by the learned counsel for the plaintiff sustain our view, although some of them may differ somewhat from the present case in their facts. Hence it must be ruled, both on principle and authority, that the complaint states facts constituting a cause of action in equity against *John Bogie*.

It is only necessary to observe, further, that under the averments in the complaint, that the defendant *McClery* took a conveyance of a portion of the lands in controversy without paying any consideration therefor, and with full notice of the plaintiff's equities, the plaintiff is entitled to the same relief against *McClery*.

*By the Court.*—The order appealed from is reversed, and the cause will be remanded to the circuit court for further proceedings according to law.