Peterson vs. Oleson, imp.

*By the Court.*— So ordered.

PETERSON vs. OLESON, imp.

EQUITY: PARENT AND CHILD: MORTGAGE: RESCISSION: ANNUITY. *(1) Mortgage by son to secure payment of annuity to parent: Remedy for breach. (2) Northampton tables. (3) Allowance for value of future performance of covenanted filial duty. (4) Form of foreclosure judgment in such case: Term of redemption before sale: Future annual payments to be made in cash.*

1. A son gave a mortgage of land to secure performance of covenants by which he was bound to furnish his mother, the plaintiff, each year, commencing in 1868, a certain quantity of grain, hay and pasture, and for every second year certain other chattels, etc. On his failure to perform his covenants: *Held*, that as the condition of the mortgage is not the support and maintenance of the plaintiff, but the payment of life annuities in specific articles, the proper remedy is not a rescission of the contract (as in *Bogie v. Bogie*, 41 Wis., 209, and *Bresnahan v. Bresnahan*, 46 id., 385), but a foreclosure of the mortgage, and sale of the premises to make the amount of damages accrued for past breaches, together with the present value of the annuity which the mortgagor's covenants bind him to pay plaintiff for the remainder of her life.

2. In computing the present value of such annuity, there was no error in

Peterson vs. Oleson, imp.

using the Northampton tables, in the absence of any statute or rule of court on that subject.

3. By the terms of the mortgagor's covenant, he is also bound to take care of plaintiff during sickness, until her death; and, in a suit to foreclose, the court below included in the judgment a certain sum as the estimated value of such future care. On appeal of a judgment creditor of the mortgagor, made a defendant to the action: *Held*, that as the covenant was for the performance of a prospective filial duty, the value of which cannot be estimated in money, the allowance of this item was error.

4. Judgment in such a case should permit a redemption at any time before sale, by payment of the sum actually due for past breaches, including stipulated solicitor's fees, with interest and costs (leaving plaintiff at liberty to apply for a further judgment in case of any future default). And it should direct future annual payments to be made *in cash*, at the cash value of the stipulated payments as determined by the court.

APPEAL from the Circuit Court for *Dane* County.

This is an action to foreclose a mortgage on certain lands in Dane county, executed by the defendant *Ingebretson alias Erdahl* to his father and mother, Ingebret Peterson (now deceased) and the plaintiff. The mortgage was executed in December, 1865, to secure the performance by the mortgagor of the following covenants contained in a bond of even date with the mortgage executed by him to the mortgagees:

" I bind myself, my heirs, executors, administrators and assigns, to furnish to the said *Ann Peterson* and Ingebret Peterson, her husband, on the first day of October of each and every year, thirty bushels of good wheat, five bushels of oats, and one fat hog not to weigh less than two hundred or two hundred and fifty pounds, to be furnished only every other year, commencing on the first day of October, A. D. 1868; and I further bind myself, my heirs, executors, administrator and assigns, as aforesaid, to furnish to the said parties in due season, each and every year as aforesaid, a sufficient quantity of hay and necessary pasture for one cow and three sheep; also to furnish a sufficient quantity of good wood for fuel, cut, hauled and ready for use — the said wood to be furnished only every other year, commencing on the first day of

October, A. D. 1868; also to furnish to the said parties all necessary store-room for the aforesaid mentioned thirty bushels of wheat and five bushels of oats, during their life-time; and in case the said *Ann* and Ingebret Peterson shall have to build themselves a dwelling-house, then I bind myself and heirs to haul one-half of all the building materials onto the place where the said dwelling-house is to be built, on the land of Peter Ingrebetson, in said town of Pleasant Springs, and also to furnish the same parties as aforesaid, at any time during their life-time, team and wagon to go to mill and to bring to market their grain they may have to sell. I further bind myself, my heirs and assigns, in case the said *Ann Peterson* and Ingrebret Peterson shall have the above mentioned cow pastured in the pasture of Peter Ingebretson, his heirs or assigns, then I do hereby agree to pasture another cow belonging to the said Peter Ingebretson, his heirs or assigns, so long as the said *Ann* and Ingebret Peterson, or either of them, shall live. I also bind myself, my heirs and assigns, as aforesaid, to aid, assist and take good care of the said *Ann Peterson* and Ingebret Peterson, her husband, during all their sickness until their death, and in case of the death of either of the said parties, the surviving party to have and demand one-half only of the above mentioned provisions, but to have the same right in all other respects with regard to store-room, pasture, hay, and the same quantity of wood for fuel, as when both were living."

It was proved on the trial, and found by the court, that Ingebret Peterson died in March, 1868, and that the plaintiff has never received anything on the annuity secured by the mortgage. It was also proved (but not expressly found) that the plaintiff had frequently demanded of the mortgagor performance, or part performance, of the stipulations in the bond, commencing soon after a payment first became due.

The court ascertained the value of the several articles to be delivered pursuant to the contract, at the average value thereof

for ten years as proved on the trial, reducing the biennial to annual payments, for convenience of computation, and stated the value of the annuity as follows:

| | |
|---|---:|
| " 15 bushels of wheat @ 99c..... ........................ | $14 85 |
| 2½ bushels of wheat @ 31c............................... | 77 |
| Keeping one cow (hay and pasturage) per year........... | 20 00 |
| Keeping three sheep (hay and pasturage) per year......... | 10 00 |
| 7 cords of wood @ $4.50............................... | 31 50 |
| Chopping 7 cords of wood, and getting ready for use, @ $1.00 | 7 00 |
| Milling and other hauling per year ...................... | 2 00 |
| Pork, average amount 56¼ ℔s., @ 6c. per ℔............. | 3 37 |
| Making the value of the provision as an annuity, due October 1, 1868, a sum equal to....................... | $89 49 " |

Simple interest at 7 per cent. was computed on each annuity from the time it became due to the date of judgment.

Finding that the mortgaged premises could not properly be sold in parcels, the court also ascertained the present value of payments thereafter to become due, using the Northampton tables to fix the probable duration of plaintiff's life. The court gave judgment for the aggregate amount of the payments and interest due, and the present value of the annuity, as thus ascertained, together with $100 solicitor's fees stipulated in the mortgage, and $100 for the probable value of the care and assistance in sickness, stipulated for in the bond. The judgment provides for a redemption on payment of such aggregate amount, with interest and costs, at any time before sale of the mortgaged premises, which is adjudged in the usual form.

The defendant *Oleson*, who was a judgment creditor of the mortgagor, and had a lien upon his interest in the mortgaged premises, appealed from the judgment.

For the appellant, there was a brief by *Keyes & Chynoweth*, and oral argument by *Mr. Chynoweth*. They contended, among other things,[1] 1. That the instrument, in the form

[1] Although there does not appear to have been any real controversy between the parties upon the point whether the principal defendant's rights were those

of a mortgage executed by the defendant *Erdahl* to the plaintiff and her former husband was a mortgage in fact and in law, notwithstanding the special character of the conditions therein expressed. *Lanfair v. Lanfair*, 18 Pick., 299; *Fiske v. Fiske*, 20 id., 499; *Marsh v. Austin*, 1 Allen, 235; *Gilson v. Gilson*, 2 id., 115; *Bryant v. Erskine*, 55 Me., 153 (modifying some previous cases in that court so far as concerns the necessity of the mortgagee's consent to an assignment); *Wilson v. Wilson*, 38 Me., 18; *Bethlehem v. Annis*, 40 N. H., 34; *Eastman v. Batchelder*, 36 id., 141; *Flanders v. Lamphear*, 9 id., 201; *Austin v. Austin*, 9 Vt., 420; *Henry v. Tupper*, 29 id., 358; *Page v. Green*, 6 Conn., 338; *Stoughton v. Pasco*, 5 id., 442; *Chase v. Peck*, 21 N. Y.,

of a mortgagor, it has been thought best to give the authorities cited for the appellant on that point. Those parts of the bond and mortgage given by *Erdahl*, upon which it was supposed that the question might arise, and which are not included in the text, are here added.

The bond recites the execution to the obligor of the deed of conveyance made by Ingebret Peterson and *Ann Peterson*, and states that in consideration thereof the said obligor is "held and firmly bound, *under penalty of annulling and making void said conveyance*," to perform his undertakings in said bond. After stating these as they are above set forth in the text, the instrument adds: "And it is further agreed and understood that each of the aforementioned undertakings and agreements shall run with the land as covenants to be by me, my heirs or assigns, performed as conditions precedent to an absolute title in fee simple, and the possession of said store-rooms for grain and the pasture for one cow and three sheep shall for all practical purposes be considered as possession of the whole; it being the true intent and understanding of these presents, that the said Lars Ingebretson shall not have a right to encumber said land in any manner whatever, but shall have the right by deed of quitclaim to transfer his interest in the same, subject to the agreements above enumerated, while the title in fee simple shall become absolute in the said Lars Ingebretson, his heirs or assigns, on the death of said *Ann Peterson* and Ingebret Peterson, her husband, anything in the said deed of conveyance this day executed as aforesaid to the contrary notwithstanding."

The mortgage is conditioned for the performance by the mortgagor of the undertakings and agreements of the bond, and contains a power of sale.

The deed of conveyance, bond and mortgage seem to have been executed contemporaneously.                                    REP.

581; *Ackla v. Ackla,* 6 Barr, 228; *Daniels v. Eisenlord,* 10 Mich., 454; *Tucker v. Tucker,* 24 id., 426; *Randall v. Phillips,* 3 Mason (U. S. C. C.), 378; 1 Hilliard on Mort., 120; 1 Jones on Mort., 389; 2 Greenl. Cruise, 80, n. In this connection counsel contended that the question of *certainty of compensation* on default, in this class of mortgages, was hardly an open one; and they criticised a remark in *Berrinkott v. Traphagen,* 39 Wis., 227, to the effect that the *gross value* of the annuity was " not measurable by any exact pecuniary standard," citing in a contrary sense *Wright v. Young,* 6 Wis., 127; *Schell v. Plumb,* 55 N. Y., 592; *Jackson v. Edwards,* 7 Paige, 408; *Wager v. Schuyler,* 1 Wend., 553; *Runnells v. Webber,* 59 Me., 488; *Unger v. Leiter,* 32 Ohio St., ; *Terry's Ex'r v. Drabenstadt,* 68 Pa. St., 400; *Rowley v. L. & N. W. Railway Co.,* L. R., 8 Exch. Cas., 221; as well as *Austin v. Austin* and others of the cases cited *supra.* 2. That if the instrument was a mortgage in its *inception,* then it is still a mortgage, according to the maxim, " Once a mortgage always a mortgage " (1 Powell on Mort., 116, 117, note 7, 127); and the right to redeem remains until foreclosed in the manner required by the statute. In this connection counsel criticised the decision in *Bresnahan v. Bresnahan,* 46 Wis., 385, as appearing to proceed upon the idea that an instrument acknowledged to have been a mortgage in its inception, could become an absolute conveyance by a subsequent default of the mortgagor; and they contended that it has been the settled doctrine of this state for more than a quarter of a century that the legal title remains in the mortgagor, and does not pass from him by default, but only upon a foreclosure and sale. *Gillett v. Eaton,* 6 Wis., 30; *Tallman v. Ely,* id., 244; *Wood v. Trask,* 7 id., 566; *Hennesy v. Farrell,* 20 id., 42 (which involved a mortgage and bond for support); *Brinkman v. Jones,* 44 id., 510; *Russell v. Ely,* 2 Black, U. S., 575. They further argued that the right of redemption is a vested right in the mortgagor from the inception of the mortgage, and cannot be

cut off even by contract between the parties relating to a future contingency *(Quartermous v. Kennedy,* 29 Ark., 544; *Wing v. Cooper,* 37 Vt., 169; *Davis v. Hemenway,* 27 id., 589; *Austin v. Austin, supra; Rogan v. Walker,* 1 Wis., 578; *Smith v. Hoyt,* 14 id., 257; *Sage v. McLaughlin,* 34 id., 550; *Walker v. Gulliford,* 36 id., 325); that for breach of a mortgage the remedy provided by statute is exclusive *(Noyes v. Sturdivant,* 6 Shep., 104; 2 Jones on Mort., sec. 1317); that the only case cited to sustain *Bresnahan v. Bresnahan* is *Bogie v. Bogie,* 41 Wis., 209, in which there was no question of a mortgage at all, but an absolute conveyance from the party to be supported was rescinded; that the same was true in *Jenkins v. Jenkins,* 3 Mon. (Ky.), 327, *Scott's Heirs v. Scott,* 3 B. Mon., 2, and *Leach v. Leach,* 4 Porter (Ind.), 628, which were also decided in states where, at the time of the decisions, the legal title passed to the mortgagee, and no right of redemption was recognized; and that *Reid v. Burns,* 13 Ohio St., 49, on which *Bogie v. Bogie* seems to rest, was also decided in a state where the right of redemption from a mortgage is unknown. 3. That one seeking rescission of a contract for a breach thereof must at least move on the first knowledge of such breach (Willard's Eq. Jur., 292; *Powell v. Hankey,* 2 P. Wms., 82; *King v. Hamilton,* 4 Pet., 311, 329; *Pratt v. Carroll,* 8 Cranch, 471; *McKay v. Carrington,* 1 McLean, 50; *Brashier v. Gratz,* 6 Wheat., 528; *Atlantic Delaine Co. v. James,* 94 U. S., 207; *Willard v. Henry,* 2 N. H., 120; *Lawrence v. Dale,* 3 Johns. Ch., 23; *Lewis v. Carstairs,* 5 Watts & Serg., 209; *Martin v. Ives,* 17 S. & R., 366; *Ackla v. Ackla,* 6 Barr, 228; *Ayres v. Mitchell,* 3 Sm. & M., 683; *Brown v. Peck,* 2 Wis., 281); and that where a lien intervenes between the breach and the suit instituted thereon, the decree revests the title, not as of the time of the breach, but as of the time of the decree. *Henderson v. Hunton,* 26 Gratt., 926; *Fripp v. Talbird,* 1 Hill (S. C.) Ch., 142; *Backhouse's Adm'r v. Jett's Adm'r,* 1 Brock., 500; *Pearsoll v. Chapin,* 44 Pa. St., 9, 15; *Austin v.*

*Austin*, 9 Vt., 420; *Hogeboom v. Hall*, 24 Wend., 146. 4. That if defendant was entitled to redeem, the terms of redemption fixed by the judgment were erroneous. (1) The determination of the present value of the future annuity is erroneous, because, though the annuitant testified that she was in good health, there was no evidence as to her *constitutional vigor* or *habits (Schell v. Plumb*, 55 N. Y., 599; *Unger v. Leiter*, 32 Ohio St.,   ); and also because the calculation was made by the use (against objection) of the Northampton tables, instead of the testimony of living experts. *City of Ripon v. Bittel*, 30 Wis., 619. (2) The allowance of interest on arrears of the annuity (which was in specific articles) was error. *Philips v. Williams*, 5 Gratt., 259; *Adams v. Adams*, 10 Leigh, 527; *Sprague v. Sprague's Estate*, 30 Vt., 483. (3) It was error to allow $100 for the present value of future care and attendance in sickness, there being neither averment nor proof upon which such an allowance could be calculated. The action being not merely upon the bond, but also to foreclose the mortgage, each future annuity should be treated as an installment, and the judgment should provide for its future payment as such *(Tucker v. Tucker*, 24 Mich., 426), and should provide for a stay of proceedings upon defendant's bringing into court the amount now actually due, with interest and costs. *Sauer v. Steinbauer*, 10 Wis., 370; R. S., sec. 3157.

For the respondent, there was a brief by *Bashford & Spilde*, and oral argument by *Mr. Spilde:*

In *Berrinkott v. Traphagen*, 39 Wis., 219, the court were unanimous in the opinion that an annuitant's measure of damages upon a forfeiture was the gross value of the bond, *i. e.*, the annuities in arrears, with interest, and the present value of the prospective annuities according to approved life tables. The fact that there was an option clause in the bond in that case, in no way affected the opinion. The court was divided as to whether the sum named in the bond, to which the option clause related, should be treated as penalty or as

liquidated damages. Had it been treated as penalty, it is clear that the option clause could not have operated to give the obligee anything more than compensatory damages. It is clear that in the case of a bond for support nothing less than the whole value of the provision will compensate the obligee upon a breach. This court has even gone farther in *Bogie v. Bogie*, 41 Wis., 209, and held that equity would rescind the conveyance; but that is not asked here. Again, the judgment should not be reversed because it includes the present value of prospective annual payments, unless there was error in decreeing a sale of the whole mortgaged premises. Under our statute (R. S. 1858, ch. 145, sec. 9; R. S. 1878, sec. 3160), if the premises cannot be advantageously sold in parcels, the court may direct a sale of the whole and payment of the sum due, and also of sums to become due, deducting interest; and that is what this judgment provides.

The respondent's counsel also argued other questions raised by the record.

LYON, J. The bond which the mortgage was given to secure, is not conditional for the support and maintenance of the mortgagees, but for the payment of life annuities in specific articles. The learned counsel for both parties seem to agree that foreclosure of the mortgage and sale of the mortgaged premises is the proper remedy, and not rescission of the contract, as in *Bogie v. Bogie*, 41 Wis., 209, and *Bresnahan v. Bresnahan*, 46 id., 385. We concur in this view.

The court found, substantially, that the mortgaged premises cannot be sold in parcels without injury to the parties interested, and proceeded to ascertain the present money value of the plaintiff's life annuity, using for that purpose the Northampton tables. These tables are adopted in the new circuit court rules, and we think they were properly used in the present case, in the absence of any rule on the subject. Nothing inconsistent with this was said in *Berrinkott v. Traphagen*,

39 Wis., 219, although it was there suggested that perhaps life tables prepared at a later time might give the average probable duration of life in this country with more accuracy than it is given in the Northampton tables.

We find certain errors in the accounting and judgment, which must be corrected:

1. The wood was due but once in two years, and the accounting makes it due annually. The mortgagor is charged $38.50 annually for wood and cutting it, whereas he should only be charged one-half that sum. It was conceded on the argument that this correction should be made. We find no other error in the amount of the annuity. The annuity is therefore $69.74 instead of $89.49. The interest on the payment overdue will be correspondingly reduced, as will also the present value of the annuity.

2. The item of $100, allowed prospectively for care and attendance in sickness, must be stricken out. That is a stipulation for the performance of a filial duty, the value of which it is quite impossible to estimate prospectively in dollars and cents.

3. The judgment should permit a redemption by the payment of a sum actually due on the bond, with solicitor's fees, interest and costs, at any time before sale; leaving the plaintiff at liberty to apply for a further judgment in case of any future default. For the purposes of future payments, the annuity will be $69.74, payable in cash.

In all other respects, we think the accounting and judgment are correct.

*By the Court.* — The judgment is reversed, with costs, and the cause will be remanded with directions to the circuit court to render judgment for the plaintiff as above indicated.