GLOCKE, Respondent, vs. GLOCKE, imp., Appellant.

*January 29—February 18, 1902.*

*Deeds: Condition subsequent: Breach: Re-entry: Parent and child: Conditions for support: Presumptions: Equity: Contracts: Rescission: Quia timet: Forfeitures: Cancellation of deed.*

1. It is not essential to a condition subsequent in a conveyance of property, that it be created by express words, or that there be

any express power in the writings to make re-entry for condition broken, or to do anything equivalent thereto.

2. If an aged parent conveys his property to his son to secure support for himself during the remainder of his life, whether the agreement calls for support generally or by paying to the grantor money or property in specific amounts at specified times, the presumption is that the primary purpose of the grantor is to secure personal performance by the grantee of the obligations incurred by him.

3. In the circumstances above stated, there being no adequate remedy for such a breach of the agreement by the grantee as will prevent the grantor from realizing the purpose of the grant other than a restoration, so far as practicable, of the parties to their former position, a court of equity will read out of the papers evidencing the agreement a condition subsequent upon which the property was conveyed, enforceable by the grantor the same as any other such condition in the conveyance of property.

4. In case of a conveyance of property as and for the purpose above indicated, and of the grantee, by his conduct, rendering impossible of realization the purpose of the grantor, if the latter elects to rescind the transaction for breach of condition subsequent, a court of equity will take jurisdiction to give a protective remedy to him by establishing his status as owner of the property. It takes jurisdiction in such a case, not to forfeit a title, but to quiet a title already forfeited for non-performance of the condition subsequent. To the end that the conditional grantor's remedy may be complete, it will cancel all writings and records that might otherwise be used, presently or in the future, to his prejudice, acting, not upon the theory that they are avoided by the act of the court, but that they are void independent thereof, and that equity jurisdiction is required to settle the status of the property in accordance with the facts, on the principle of *quia timet*, and to clear away those things which, though void in fact, might, by reason of their apparent force, be used by the holders thereof in some way, presently or in the future, wrongfully.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action to enforce rescission of a contract for nonperformance of a condition subsequent. The issues raised by the pleadings sufficiently appear by the findings of fact and con-

clusions of law.   For the purpose of this appeal such findings and conclusions may be stated as follows:   May 23, 1899, and for many years prior thereto, plaintiff owned and possessed as his homestead the lands described in the complaint. Defendant *Albert Glocke, Jr.,* is plaintiff's son and is twenty-five years of age.   Defendant Emma Glocke is the son's wife. May 23d, aforesaid, plaintiff, by a deed with full covenants, conveyed the lands mentioned to his said son, receiving as the only consideration therefor an agreement, executed by the latter and his wife, secured by a mortgage for $5,000 on said lands, by which agreement it was stipulated that plaintiff should have the use of a designated part of the dwelling house on said lands during his life, the use  of one acre of land for a garden, the right to go upon any part of the premises at his pleasure, and the right to permit such persons as he might desire to come upon the land to visit him; that defendants would manure and plow plaintiff's garden spot when requested to do so; that they would give plaintiff good and proper care and nursing in case of his sickness, and at such times obey his request to procure a doctor and pay the doctor for medical services; that they would furnish plaintiff, at any time he might desire, any horse that might be on the farm, with rig and harness, ready for his use to go anywhere he might choose; that the occupancy of the premises by the defendants should commence March 1, 1900; that March 1, 1901, and annually thereafter during plaintiff's life, defendants would pay him $75 in money; that they would, during his life, deliver to him each year at threshing time forty bushels of good wheat, at digging time forty bushels of good potatoes, at shearing time ten pounds of the best wool, in November 100 pounds of good beef and two hogs weighing not less than 200 pounds each, two quarts of fresh milk every day, one dozen eggs daily from March 1 to November 1, three pounds good fresh butter every week, one fat

chicken every week, at Thanksgiving time two fat geese, and all the good dry wood he might desire for fuel, ready for the stove; that in case plaintiff should die leaving a widow, she should have the use during her life of a designated part of the dwelling house as aforesaid, all the good dry fuel she should need, prepared for the stove, and one-half as much money, wheat, potatoes, beef, pork, wool, butter, eggs, milk, chickens and geese as that agreed to be furnished plaintiff, and at the time designated for furnishing the same to him; that on the full performance of all the conditions aforesaid to be performed by the defendants, both as to the plaintiff and as to his widow, should he die leaving one, after his death and the death of his widow, if there should be one, the said mortgage should become void and of no effect, and be canceled of record.

As soon as defendants took possession of the farm under the aforesaid agreement, they became intolerably abusive toward plaintiff. They failed, nearly from the first, to carry out any part of the aforesaid agreement. They did not perform any of such agreements except to furnish butter and eggs and milk for about ten days, though they were repeatedly requested to comply in every respect with their contract. Subsequent to the making of the contract plaintiff married and took his wife to live with him on the farm. Defendants immediately thereafter became intolerably abusive toward her. April 5, 1900, without the consent of plaintiff or his knowledge, defendants left the premises to live on a farm purchased by them, some twenty miles away, taking all their belongings with them, after which time they made no attempt whatever to fulfill any of the obligations of said agreement. By reason of such removal they rendered themselves wholly incapable of complying with their contract. After such removal defendants freely asserted to plaintiff that they would not abide by their said agreement, and they gave out publicly that they would sell or lease the place, or commit waste

thereon.   The premises are worth about $8,000.   Plaintiff
never gave up possession thereof other than as contemplated
in the contract, but is now in possession the same as before
the contract was executed.

The conclusion of law was that the transactions between
the parties, consisting of the making of the deed, mortgage
and contract, should be deemed rescinded and all rights which
the parties obtained through such transaction extinguished,
and the title to the property involved adjudged to be in plaint-
iff the same as if such transaction had never occurred.

Defendants alleged in their answer, by way of counter-
claim, that when the contract was made, which was at-
tempted to be reduced to writing by the making of the deed,
written agreement and mortgage, it was a material part
thereof that a large amount of the personal property and
farming utensils in use and for use on the farm should go
with the farm to the defendants as part of the consideration
for the agreements on their part contained in the written
contract referred to; that by mutual mistake the papers were
so drawn as not to carry out that part of the arrangement
between the parties, and that plaintiff has refused to let the
defendants have any part of said personal property.   There
was a prayer for a reformation of the agreement and deed
so as to embody the part alleged to have been omitted there-
from. `

Judgment was rendered for plaintiff in accordance with
the conclusions of law as before stated.

For the appellant there was a brief by *C. F. Crane,* attor-
ney, and *Gabe Bouck,* of counsel, and oral argument by
*Mr. Crane.*

For the respondent there was a brief by *E. L. & E. E.
Browne,* and oral argument by *E. E. Browne.*

MARSHALL, J.   The disposition of this case by the trial
court was not complete in that there was a failure to make

findings covering the allegations of the counterclaim consti-
tuting a cause of action for a reformation of the deed. How-
ever, appellant does not appear to have been prejudiced
thereby, because the evidence did not establish such allega-
tions with sufficient certainty to warrant findings in his favor.
It is elementary that a written contract or instrument can-
not be reformed so as to include matters alleged to have been
omitted therefrom through mutual mistake, or mistake of one
party and fraud of the other, without entirely clear and satis-
factory proof of all the facts involved,—proof which will
admit of no reasonable controversy. *Meiswinkel v. St. Paul
F. & M. Ins. Co.* 75 Wis. 147. In such a case the party
upon whom the burden of proof rests must do more than to
produce a mere preponderance of the evidence tending to
establish the facts in his favor to a reasonable certainty, as
in an ordinary civil case. The court cannot overturn the sol-
emn agreements of parties, as indicated by their writings, by
merely choosing between conflicting reasonable inferences,
where there is a fair controversy yet remaining. The in-
ferences must be substantially either all in favor of the ref-
ormation requested or must so overbalance the inferences
to the contrary that a reasonable person would not be liable
to act thereon otherwise than in favor of the major infer-
ences. Many courts hold the degree of certainty with which
a contract must be established to warrant changing a written
agreement, intended to embody that which the minds of the
parties met upon but which fails to do so, is the same as that
required to warrant conviction in a criminal case, i. e., beyond
a reasonable-doubt. This court has not gone quite that far,
but has followed the rule which generally prevails, that the
facts must be established, as before indicated, beyond reason-
able controversy. Perhaps it may well be said that the dif-
ference between the two rules is quite shadowy and inconse-
quential, yet it is considered that there is a difference. In
*Kropp v. Kropp,* 97 Wis. 137, the language used was, "The

rule which governs in this class of cases is that the facts requisite to a recovery must appear by clear and satisfactory evidence, or, as is usually said, the proof of the facts must be entirely plain and convincing." In a later case, *Fillingham v. Nichols,* 108 Wis. 49, speaking on the same subject, the court said the proof should be such as to establish the facts "beyond reasonable controversy." The language is probably more comprehensive than any other of the various expressions commonly used. The supreme court of the United States uses similar language in respect to the subject:

"In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties." *Howland v. Blake,* 97 U. S. 624.

A brief review of the evidence will be sufficient to demonstrate that it comes far short of satisfying the standard above indicated. Appellant *Albert Glocke* said that when the paper was made the understanding was that the farm implements would stay on the place. Defendant *Emma Glocke* said the same and that respondent consented to give appellant the farm and personal property. Neither of the defendants testified that there was anything said about personal property being mentioned in the conveyance or contract. Both testified that they knew within a few days after the papers were drawn that respondent claimed the personal property and that no mention thereof was made therein. They did not make any complaint in respect thereto or intimate in any way that any mistake had been made in the writings. With full knowledge of the facts, and without objection, nearly a year after the papers were made, they entered upon the performance of their obligations, and there is nothing to show that they ceased performance because of any breach upon respondent's part

either of the written contract or the contract they claimed should have been reduced to writing. Respondent testified that he did not agree to convey the personal property or have any such thing in mind; that the only time such property was mentioned was when the papers were being signed, when he said to appellants: "If you keep me good, everything will be left. Not a pin will be taken off. If you do not keep me good I will do what I have a mind to;" and that he never said anything other than that to any one. The scrivener who drew the conveyance and mortgage testified that respondent used some such language; that no directions were given to him to embody in the conveyance any reference to the personal property; that the parties talked partly in German and partly in English. Two relatives of appellant testified that respondent said to them the day the papers were made that he had given everything to his son. So it will be seen that the evidence, that the parties agreed that the conveyance of property to appellant should include respondent's personal property on the farm, is not entirely clear and satisfactory. All parties were present when the papers were drawn. Appellant must have heard and participated in giving directions to the scrivener; yet there is an entire absence of testimony as to anything having been said to him about mentioning personal property in the papers. The evidence corroborating appellant's version of the matter is no stronger than that corroborating respondent's version. The case stands substantially on the evidence of the opposing parties. It is far too weak to warrant changing their written contract.

The claim is made that the findings of fact are not supported by the evidence. As we understand defendants' counsel, they do not contend but that substantial breaches of defendants' obligations were established if the contract between the parties required them to reside upon the farm or where they could render respondent personal attention, but say the contract will not bear that construction. In our judgment

it will not reasonably admit of any other construction. Respondent's purpose clearly was to make provision for his support during the balance of his life, including care and nursing in sickness and all the attention which a person in his declining years might probably require. It is not reasonable that he would have thought of intrusting his future in those respects to any one but a member of his family, or that he would have made such a disposition of his property as he did with the idea that his immediate associate or associates during the last years of his life might be a stranger or strangers,— persons who would have no interest whatever to care for him but the expectation of pecuniary compensation to be paid by another; that he should have mere hired attention. Respondent had in mind the benefits of filial regard,—something which, under ordinary circumstances, uninfluenced by disturbing conditons, is invaluable; something which can neither be estimated in nor bought with money, nor made the equivalent of anything else in a mere commercial transaction. The natural yearning of a person to have in his declining years the full benefit of that regard is well illustrated by the frequency with which persons, circumstanced as respondent was when the transaction in question occurred, part with all or substantially all their property, trusting to the beneficiary to administer the same with the fidelity which becomes a son, in face of the fact shown by experience, that failure, absolute failure, will probably result, and be accompanied with loss of the enjoyment that legitimately belongs to the parental relation; and not only by loss thereof, but a substitution therefor of the most annoying of all hostile relations that can exist between acquaintances not going to the extent of imperiling safety of person or property in a physical sense. Such contracts have come to be looked upon as almost if not quite presumptively improvident in their inception, and in that view courts of equity have gone to great lengths to remedy the mischief by reading out of them a conditon, where

a covenant only is expressed, upon which may be founded, on principle, a right of rescission where justice requires it for the protection of the weak, the exercise of which will undo the mischief *ab initio* and restore the parties, substantially, to their original situation.

In this case it seems that the hope and expectation of filial regard was the moving cause on the part of respondent in transferring his property to his son. The contract contained the characteristic features found in most agreements of its class, with which courts have commonly had to deal. It obligates appellant and his wife to give respondent good and proper care and nursing in sickness and to hold themselves ready at all times to execute respondent's request to procure for him a physician; and it required the doing of things for him from day to day that could not be done other than by the personal presence of the son and his wife, or one of them, and which would not in the nature of things have been intrusted to any one with power to delegate it to another. We cannot doubt but that one of the primary considerations for the conveyance made by respondent was the agreements, as he understood them, which would secure to him the personal presence of his son during his last years. That is as plainly written into the papers by reasonable construction of them as if it were literally expressed. The contract reposed in appellant a trust of the most important character—that of caring for the daily wants of an aged parent in health and sickness to the end of his life,—a trust which only the trustee, under proper conditions, could properly exercise—one that never ought to be delegated, never can be properly delegated to another not in the same relation. *Divan v. Loomis,* 68 Wis. 150. Looking at the evidence in the light of common experience, and the construction generally put upon instruments similar to the one before us, we must hold that it required defendants to live on the land conveyed and to personally execute the agreements on their part to be performed; and that when

they abandoned the farm and set up a home twenty miles away, they incapacitated themselves from performing their obligations,—breached the same in such a way as to take from respondent a substantial part of the consideration for the conveyance of his property, a part which, taken away, rendered what remained entirely inadequate to satisfy the purpose of the conveyance, and without which it would never have been made. That renders it unnecessary for us to examine in detail the evidence to see whether it sustains each particular violation of the contract of which defendants were convicted by the finding of the trial court.

The next proposition submitted by appellant's counsel is that a transaction of the kind in question is not subject to rescission unless it was made generally for maintenance and support; that it is not subject to rescission where the agreement between the parties calls for specific payments of money or the delivery of property from time to time, the value of which can be readily ascertained, and a mortgage was given to secure performance thereof as in this case, though the agreement may also provide for care and nursing, since damages for a breach in that regard can be measured in money. In view of the law that performance of such a contract as the one in question is not delegable, it would seem that counsel's proposition has been covered by what has been said if it were not for *Peterson v. Oleson,* 47 Wis. 122, upon which he relies. The contract there passed upon was similar in all respects to the one before us, and it was distinctly held that the remedy by foreclosure of the mortgage, not by an action in equity for a reclamation of the property, applied. The real basis for the jurisdiction of the court in this class of cases, it seems, was not thoroughly established and comprehended. In the first case where the court had the subject under consideration, *Bogie v. Bogie,* 41 Wis. 209, the facts were that the plaintiff, an aged person, gave the defendant, his son, a deed of his property in the usual form, taking back an agreement as con-

sideration therefor, binding the grantee to pay certain sums
of money to other members of the grantor's family, and to
support his father during the remainder of his life. The son
failed to perform any part of his agreement. This court de-
cided that it could not be held that performance of the con-
tract by the defendant was a condition subsequent and that
the conveyance could not be rescinded for nonperformance
of such a condition, but that it was within the power of the
court to deal with the situation and remedy the wrong by
annulling the whole transaction between the parties, forfeit-
ing the title to the property to the father on the ground of
fraud, or to prevent the fraud that would otherwise be con-
summated. No attempt was made to justify the decision
on principle, other than by an observation that the equity
power of the court to compel specific performance of a con-
tract, where failure to perform would be a fraud upon the ad-
verse party, includes, necessarily, power to annul a contract
or conveyance where that is required to prevent injustice.
That rule, perhaps, was not broad enough to govern *Peterson
v. Oleson,* upon the theory that damages for the breach com-
plained of were susceptible of measurement in money, and
the parties had limited the remedy for the breach by giving
the mortgage to secure performance of the contract. It is
significant that *Peterson v. Oleson* has not been followed in
any subsequent decision. We are unable to find that it has
ever been cited as authority. It seems to be out of harmony
with *Bogie v. Bogie,* except upon the theory suggested, and
out of harmony with numerous cases that have been since
decided, and that it has been impliedly overruled. It is per-
haps unfortunate that the real situation in that regard has
not heretofore been made significant by some direct reference
thereto, since counsel for appellant seem to have relied upon
*Peterson v. Oleson,* largely, in bringing this appeal, and it
is not improbable that such case may have ruled many cases

in trials at the circuit, which have not been brought to the attention of this court.

The only case after *Bogie v. Bogie,* in which the subject under consideration received attention here, except *Peterson v. Oleson,* and in which the former was followed, not recognizing any other ground for relief than the one therein stated, is *Bresnahan v. Bresnahan,* 46 Wis. 385. When the court reached *Blake v. Blake,* 56 Wis. 392, it was suggested that the stipulations made by the grantee in the conveyance, or in the contract forming the consideration therefor, might, by construction, be deemed to constitute a condition subsequent, though in form mere covenants. In *Delong v. Delong,* 56 Wis. 514, decided at the next term of the court, that suggestion was referred to in connection with references to the first two cases mentioned, the court saying that in each of such cases the obligation of the son rested in covenant, not in condition. True, it rested in covenant in form, but in condition by the rule of construction which the court intimated in *Blake v. Blake* might be applied to such a transaction, and which the court later repeatedly held was the true ground for equitable interference. In *Gilchrist v. Foxen,* 95 Wis. 428, the consideration for the conveyance was payment of a sum of money to a person named therein and support of the grantor during his life. The grantee accepted the deed and thereby impliedly agreed to render to the grantor the consideration named therein. In that, the transaction differed from each of those where there was a written agreement. The court held that what was a covenant in form should be held to be really a condition subsequent, the breach of which, with re-entry by the grantor, would operate to revest the title to the property conveyed in the grantor. In *Knutson v. Bostrak,* 99 Wis. 469, the facts, in all essential particulars, were the same as in the case at hand. Plaintiff conveyed property, consisting of a farm and farm implements which

were for use and in use in connection with such farm, all of
the value of $8,000 or thereabouts, to the defendant, his
son. The grantor was an old man and made such conveyance
to provide for his support and that of his wife the balance
of their lives. As evidence of the purpose of the conveyance
the son, at the time of the conveyance and as the considera-
tion therefor, gave to his father a written agreement prom-
ising to support him and his wife during the remainder of
their lives or the life of either of them, to provide them a
home on the farm during such period in the dwelling house
there situated, and in a part thereof particularly designated,
and to do many other things similar to those which appellant
promised to do for respondent here. Performance of the
agreement was secured by the son by a mortgage on the prop-
erty conveyed. The court held that a foreclosure of the mort-
gage was not the only remedy for breach of the agreement, no
reference being made to *Peterson v. Oleson,* 47 Wis. 122;
that the agreement contemplated personal attention of the
son to the wants of his parents as indicated in the agreement,
services which he could not delegate, and that performance
of the agreement should be held by construction to be a condi-
tion subsequent. The early cases to which we have referred
were cited, the court saying, in effect, that it is in accordance
with such cases for a court of equity to set aside such a con-
veyance for breach of condition subsequent. That was not
strictly accurate, as we have seen, so far as relates to the
precise ground upon which the court rested its decisions in
such cases at the start, it being there distinctly held that the
obligation assumed by the grantee did not rest in condition
and that relief could not be granted on that ground. How-
ever, it declared distinctly, what was the necessary con-
clusion from the history of the subject, that out of such a
transaction as the one in question the court may, by rules of
judicial construction peculiar to courts of equity, properly

read a condition, thereby holding obligations which in form rest in covenant to rest in condition; or, in other words, that a conveyance made under such circumstances is not absolute—is not to be deemed to have been so intended by the parties,—but was made and intended to have been made upon condition subsequent; and that the title to the property conveyed may be devested from the grantee and revested in the grantor the same as in any other case of a conveyance upon such a condition. That rule is reasonable. If any of the situations where equity, by construction, so called, may arbitrarily, if necessary, turn a transaction into something entirely different from what the parties thereto expressed in their writings in order to do justice, can be supported on principle, the one under consideration can. If courts of equity did not possess power to do that, they would be shorn of much of their efficiency to protect the weak, to prevent the realization of contemplated frauds, of unconscionable bargains, and, generally, of administering justice between man and man. Probably no situation can be named where the exercise of that important power is more needed than just such as the one before us,—one where a confiding parent, in his old age, trusting largely to the affectionate regard of his son, conveys to the latter all his property to secure support and personal care for the balance of his days, and the consideration, by the wrongful conduct of the son, so far fails that there is no efficient remedy that can be applied to right the wrong other than to restore the parent to the ownership and possession of his property. In such a case the court does not lend its jurisdiction to effect a forfeiture. The rule in that regard is not violated. The forfeiture, or rescission, as it is sometimes called, is effected by the acts of the grantor, by his re-entry, or its equivalent, for condition broken. Equity lends its aid to quiet the title, as said in *Knutson v. Bostrak,* 99 Wis. 469. It lends its aid to "set aside the conveyances."

Equity deals with the situation the same as with any other where a reversion of title has taken place by re-entry, or its ·equivalent, for condition broken. It establishes the title to the property in accordance with the facts and clears away all apparently interfering writings and records, giving such other relief as may be necessary to fully accomplish that end. *Maginnis v. Knickerbocker I. Co.* 112 Wis. 385.

An examination of the authority by which *Bogie v. Bogie,* 41 Wis. 209, was supported in the opinion, and others cited to the attention of the court on the argument, bears out what has been said, notwithstanding the remark there found that the decision could not be justified upon the doctrine of forfeiture for breach of condition subsequent. *Reid v. Burns,* 13 Ohio St. 49, is the only case particularly referred to. Remarks are there made indicating that the judicial idea was that the controversy turned on fraud—the right to a rescission for fraud. Surely the idea of rescission for fraud in the making of the contract would not apply to such a case. The ·subject does not seem to have been carefully considered. If the doctrine of rescission by election of one party to a contract for breach of condition subsequent by the other party was definitely in mind, no clear statement thereof appears in the language of the court. *Tracey v. Sacket,* 1 Ohio St. 54, was referred to, but that went on the ground of undue influence in the making of the contract, and the evidence was ample to sustain that theory. Story, Eq. Jur. § 692 *et seq.,* and Willard, Eq. Jur. 302 *et seq.,* are referred to. Both authorities, where cited, treat of the power of a court of equity to clear away those things existing after a rescission by the party for nonperformance of obligations without which the contract would not have been made, and for the breach of which there is no adequate remedy other than a rescission, which have no force in fact but may be used by persons having apparent rights thereunder to the prejudice of the re-

scinding party. After going over all phases of equitable interference in such matters, Willard says (p. 304, Potter's ed.):

"It is obvious from the preceding views, that the jurisdiction exercised in cases of this sort, is founded upon the administration of a protective or preventive justice. The party is relieved upon the principle, as it is technically called, of *quia timet;* that is, for fear that such agreements, whatever may be the character of the instrument, may be vexatiously or injuriously used against him, when the evidence to impeach them may be lost, or that they may now throw a cloud over his interest."

2 Story, Eq. Jur. (13th ed.), § 701, in summing up the matter, uses similar language. The idea expressed is that equity is not invoked to obtain a forfeiture or to rescind the contract itself; that the plaintiff's rights to that extent may be vindicated by his own election and act; that what he needs is to obtain a judicial establishment of his status in regard to the thing in controversy according to the facts, so he may be freed from danger from outstanding agreements or conveyances which, though void, are apparently good upon their face, and might in some way, presently or in the future, be used to his prejudice. The court so treated the matter in *Devereaux v. Cooper,* 11 Vt. 103, a case cited to the attention of this court in *Bogie v. Bogie, supra. Leach v. Leach,* 4 Ind. 628, is another case brought to the attention of the court in *Bogie v. Bogie.* There the court acted on the authority of *Jenkins v. Jenkins,* 3 T. B. Mon. 327; *Scott's Heirs v. Scott,* 3 B. Mon. 2; *Devereaux v. Cooper, supra;* and *Hefner v. Yount,* 8 Blackf. 455, all of which cases except the last were cited by counsel in *Bogie v. Bogie.* The Indiana court decided, as regards the real situation of parties circumstanced as appellant and respondent were after the making of the papers evidencing their agreement, that the grantee holds the land upon condition subsequent that he will in all things substantially comply with his covenant, and in such cases the

failure to perform the obligation is a breach of condition subsequent, and a forfeiture of the estate forms a proper subject for the interference of a court of chancery. In *Hefner v. Yount, supra,* the facts were similar to those in *Bogie v. Bogie,* and the court decided that the grantee held the property conveyed to him subject to forfeiture for nonperformance of a condition subsequent. In *Richter v. Richter,* 111 Ind. 456, the facts were quite similar to those in the case before us, including the element of a mortgage to secure performance on the part of the grantee and promisee. The court, looking at all the circumstances under which the papers were made, said:

"Giving full effect to the rule that conditions subsequent, as they 'go in destruction and defeasance of estates, are odious in law and shall be taken strictly,' we are, nevertheless, constrained that the deed and mortgage, taken together, create an estate in the grantee upon condition subsequent, that the latter shall perform the terms stipulated in the mortgage. True, neither the deed nor the mortgage states in express terms that the estate is granted upon condition, but the word 'condition' is not necessary to the creation of an estate upon condition, if it plainly appears from the words used that the intent of the parties was to create an estate of that description."

The controlling circumstance in that case, and in most of the cases of the class to which it belongs, by which courts are enabled to reach the conclusion that the intention of the parties was that the estate granted should be held upon condition, was that the grantor was an old man, that he made the conveyance not only to secure the performance of the obligations referred to in the writings, but performance thereof by the particular person therein obligated,—performance with that affectionate regard for the welfare of the grantor which an aged father has a right to expect of his son and which he has no right to expect from a stranger or any person not standing near to him in the family relation. In such a case, if

the purpose of the agreement substantially fails of realization, nothing short of a restoration of the original status as to the property involved is an adequate remedy. So nothing short of that could be reasonably said to have been in the minds of the parties at the inception of their contract as the consequence that might follow from a breach of it. In that situation "a condition subsequent arises by clear implication." 2 Washb. Real Prop. 7.

Nothing further need be said to demonstrate that the doctrine of *Peterson v. Oleson,* 47 Wis. 122, upon which counsel for appellant chiefly relies, and the doctrine of *Bogie v. Bogie,* 41 Wis. 209, so far as it is to the effect that relief in such a case cannot go upon the ground of forfeiture for nonperformance of a condition subsequent, is not the law; and that by repeated decisions of this and other courts the law has been firmly established that where a son obtains title and possession of his father's property, giving as a consideration therefor his promise to support the grantor for life, such promise, whether the manner in which it is to be kept be definitely specified in the writings or not, is not delegable; that the property conveyed is held upon condition subsequent; that for a breach thereof the title thereto will, at the election of the grantor, no sufficient equitable considerations to the contrary standing in the way, revert without judicial aid, the same as in any other case of breach of condition subsequent; and that the grantor may have the aid of a court of equity for such appropriate relief as may be necessary to judicially establish his status as regards the property and quiet his title thereto, removing any adverse claim or outstanding paper in regard thereto that may exist, which might be used, presently or in the future, prejudicially to him. That amply justifies the judgment appealed from.

*By the Court.*—Judgment affirmed.