# CASES DETERMINED

AT THE

## January Term, 1889.

---

HARTSTEIN and wife, Appellants, vs. HARTSTEIN, Respondent.

*February 2 — February 19, 1889.*

*Reformation of contract: Parent and child: Evidence.*

1. Parents conveyed to their son their farm and personal property, worth at least $3,000, in consideration of which the son agreed in writing to furnish certain things annually for their support and to provide a house for them on the farm. In pursuance of the contract the son also gave a mortgage to secure the payment of $1,500 to the parents, in lieu of the above provision for them, in case the land should be sold during their life-time. Ten years later, the son having died intestate, the parents brought this action against his wife, who was his heir, to reform the contract and mortgage, alleging that it was in fact agreed that the $1,500 should be paid in case the son died during the life-time of the parents, as well as in case the land was sold. The plaintiffs, who, when the contract was made, were old, illiterate, and knew but little English, testified positively that such was the agreement, that they instructed the scrivener so to write the contract, and that he said he would do so. Another witness testified to a conversation with the son in which the latter said he owed his parents $1,500, which he was to pay if he sold the farm, and which they were to have in case he died. There was no other evidence on the subject, the scrivener and the witnesses to the contract being all dead. *Held,* that the contract should be reformed as prayed.

2. An objection to all that portion of the plaintiffs' depositions which relates to any communication or transaction between them personally and the son when living, if sufficiently definite for any purpose, does not cover that part of the depositions relating to instructions given by the plaintiffs to the scrivener who drew the contract.

APPEAL from the Circuit Court for *Waupaca* County.

Action to set aside a contract and a conveyance of land, or to reform such contract and a mortgage given in pursuance thereof and to foreclose such mortgage. The facts are sufficiently stated in the opinion. The plaintiffs appeal from a judgment in favor of the defendant.

*Wesley Mott*, for the appellants.

*A. L. Hutchinson*, for the respondent.

TAYLOR, J. This action grows out of one of those unwise contracts often entered into between parents and child, especially when the parents have but limited means, and become practically unfitted to carry on their accustomed business, and are anxious that their son or other relative should remain with them to care for them in their old age and make a comparatively comfortable home for their declining years. The material facts in this case are as follows:

In February, 1877, the plaintiffs, who are husband and wife, owned and were in the possession of a farm of eighty acres of land, in fair state of cultivation and of the value of about $2,500, farm implements, and stock of cattle, horses, etc., of the value of $600 or thereabouts. Plaintiffs were illiterate, and unable to read or write the English language. On that day they conveyed this farm to their son, Martin Hartstein, then about twenty-eight years old and unmarried, together with the great share of the personal property owned by the plaintiffs. The whole property conveyed to the son, Martin, was worth at least $3,000. The consideration for this conveyance was a contract on the part of Martin to furnish annually certain designated articles to aid in the support of the plaintiffs during their natural lives, as well as a house to live in on the farm conveyed to the son. The following is a copy of the contract:

" Article of agreement made and entered into this 15th

day of February, A. D. 1877, by and between *Jacob Hart-stein* and *Mary Hartstein*, his wife, parties of the first part, and Martin Hartstein, party of the second part, all of the town of Caledonia, county of Waupaca, and state of Wisconsin, to wit: The parties of the first part do hereby agree to sell, and do sell, unto the party of the second part, for and in consideration of three thousand dollars to be paid for as hereinafter specified, the following real estate, situate and described as follows, to wit: Being the south half ($\frac{1}{2}$) of the southwest quarter of section number thirty-six, in township number twenty-one, of range fourteen east; also, two horses and harness, two cows, one wagon, one pair of bobs, all the farming utensils now on the place, all the sheep except two, and all the oats and hay now on hand.

"And the said party of the second part, for and in consideration of the above real estate and personal property aforesaid, does hereby agree, and his heirs, executors, or administrators, do and shall, yearly and every year during the life of the parties of the first part, well and truly pay or cause to be paid to the said parties of the first part annually or yearly the sum of thirty-five dollars, twenty-five bushels of wheat and a place to store it, three hundred pounds of pork in butchering time, and one barrel of salt, and to keep and pasture and to winter in good husbandmanlike manner two cows, two sheep, and the privilege of keeping twelve hens or fowls on the place every year, and to let them have the use of the ground in the orchard, and half of the fruit in said orchard, and one half of what may be raised in the garden, and one fourth of an acre ready planted for potatoes, and to furnish them their firewood, ready cut, yearly.

"And it is agreed by the party of the second part, he is to build for the parties of the first part, on said farm, a house near to the well of which they are to have free access,— the house to be built the size of George Rogers', and divided the same, with a cellar under it, and to be high

enough for bedrooms up-stairs, to be ceiled overhead with boards and plastered inside. And it is further agreed that the parties of the first part are to retain and have possession of the house they now live in until he builds the aforementioned new house for them, and that he will provide all necessary provision and grocery while the said both parties live together in said house. And it is further understood that while the said two parties live together that the party of the second part is not to pay or deliver to the parties of the first part the wheat, pork and salt above mentioned. And the party of the second part further agrees that if he should sell the premises or land aforesaid during the lifetime of the parties of the first part, that he will hereby give them a mortgage to pay them the sum of fifteen hundred dollars at the time of said sale, in lieu of the afore-mentioned yearly payments, from and after the date of such sale.

"In witness whereof the said parties have hereunto set their hands and seals, date first above written.

"JACOB HARTSTEIN.          [Seal.]
"ANNA MARIA HARTSTEIN.     [Seal.]
"MARTIN HARTSTEIN.         [Seal.]

"In presence of
    "HENRY MEYER.
    "A. V. KINNEAR."

In pursuance of one of the provisions of said contract, Martin executed the mortgage upon the land conveyed to him by his parents, of which the following is a copy:

"FEBRUARY 15, 1877, COUNTY OF WAUPACA, WIS. I, Martin Hartstein, mortgagor, of Waupaca county, Wisconsin, hereby mortgage to *Jacob Hartstein* and *Mary Hartstein*, his wife, mortgagees, of Waupaca county, Wisconsin, for the sum of fifteen hundred dollars, the following tract of land in Waupaca county and state of Wisconsin, to wit: All and singular that certain piece of land situate, lying, and being in the town of Caledonia, county of Waupaca,

and state of Wisconsin, and more particularly described as follows, to wit: The south half of the southwest quarter of section number thirty-six, in township number twenty-one, of range number fourteen east, containing eighty acres, be the same more or less, according to government survey. This mortgage is given to secure the following indebtedness: The payment of fifteen hundred dollars in case the mortgagor should sell the above-described land or premises during the life-time of the mortgagees, according to a certain article of agreement made between the mortgagor and the mortgagees, of even date herewith. The mortgagor agrees to pay all taxes and assessments on said premises, and the sum of twenty dollars attorney's fees in case of foreclosure thereof. Witness the hand and seal of said mortgagor this 15th day of February, 1877."

After the execution of these conveyances and contracts, and in 1880, Martin married the defendant in this action, and the evidence in the case shows that this marriage was not approved of by the plaintiffs. In February, 1887, Martin died intestate, without leaving any issue, and under the law of this state the real estate and personal property of Martin descended to his widow, as his sole heir at law. This action was commenced in October, 1887, and since then, and in November, 1887, the defendant has remarried.

The complaint is drawn with a double purpose — *First*, to have the whole transaction between the plaintiffs and Martin set aside, and the plaintiffs restored to the ownership and possession of the farm and other property conveyed to their deceased son; and, *second*, if that relief should not be granted, then that the contract and mortgage be reformed so as to express the alleged real agreement between the parties, viz., that the mortgage for $1,500 on the farm conveyed to their deceased son, Martin, should become due to the plaintiffs in case of the death of the son

during the life-time of the plaintiffs or either of them, or in case he should sell the same during such time.

After reading the evidence we are of the opinion that the circuit judge properly decided that no such fraud was shown on the part of the deceased son as would justify a court in setting aside the conveyance of the farm and personal property to him. However improvident on the part of the parents such contracts generally are when viewed in the light of subsequent events, in the absence of any fraudulent acts on the part of the grantee the courts cannot avoid them. We are also of the opinion that during the life-time of the son he kept the provisions of the contract on his part, so that the contract could not be rescinded for want of performance of its conditions by him. Nor does the evidence show any want of performance of the contract on the part of the defendant after the death of her husband and before the commencement of this action. The only other question in the case is whether, upon the evidence, the court should have reformed the contract as claimed by the plaintiffs, and then have foreclosed the mortgage in favor of the plaintiffs for the said sum of $1,500.

The evidence in this case bearing upon this question is— *First*, the written contract and mortgage itself; and, *second*, the testimony of the two plaintiffs and the witness Spiegelberg. Both plaintiffs testify very clearly that the real contract between the parties was that in the case of the death of Martin prior to the death of the plaintiffs, the $1,500 should become due, as well as upon a sale by him. Both testify that they instructed the person who drew the contract to put that in the contract, and he stated he would do so. The witness Spiegelberg testified "that in a conversation with Martin, after the contract was made, Martin said he owed the old folks $1,500. We were talking together, and he said I was worth more than he was, but I said he was better off than I was, and then he said he owed the old

folks $1,500. . . . Then I told him that was nothing. Well, he said he could not tell; if he should die the old folks had it. Then I said he would certainly out-live them, and he finally said nobody knows. Then I said it might be so if he should die, and asked him how it was between him and the old folks, and he said he owed them $1,500. If he has the place he has to pay it, and if the old folks died he had it, that is, the $1,500." On cross-examination this witness stated this conversation in this way: " He said he owed them [the old folks] $1,500. He said he had got to pay the $1,500 if he sold the place, and if he died the old folks would have it."

The person who drew the contracts and those who witnessed them were all dead at the date of the trial, so the only evidence is the writings and the testimony as stated above. It is insisted by the learned counsel for the respondent that what the parties testified to as their understanding as to what the contract was, and what they directed the scrivener to put in the contract, is not competent evidence because of the death of the other party to the contract.

The evidence of the two plaintiffs, it seems, had been taken by deposition before the trial, and their depositions were read upon the trial. After the depositions had been read, the defendant made the following objections: " Defendant's counsel objects to all that portion thereof which relates to any communication or transaction between the *plaintiffs personally and Martin Hartstein when he was living*." Thereupon the court stated that he would receive the evidence subject to the objection, and the defendant's counsel then made the further objection: " I object to it as being incompetent,— to any communication, or anything that relates to it, between these plaintiffs and Martin Hartstein, the husband of the defendant."

We have very grave doubts whether a general objection, made as the one above, should be considered sufficient to

raise the question as to the competency of any part of the depositions. No particular part of the deposition is stated or pointed out to which the exception is intended to apply, and it leaves the court to sift out and separate the parts of the depositions, and then determine what particular parts come within the exception taken. The general rule is that the exception must either be to a particular question, or, if not to the question, then to the particular portion of the testimony which the party excepting conceives to be objectionable. The exceptions above quoted are clearly outside the general rule, and, if to be considered at all, must be restricted to communications between the witnesses and the deceased, and would not, therefore, be sufficient to cover instructions given by the witnesses to the person who wrote the contract and conveyances, as such instructions would not necessarily be included within the exceptions taken. If the testimony as to conversations had between the witnesses and the person drafting the contract and conveyances is improper evidence in the case, it is not because they are communications between the witnesses and the deceased, and an exception to such testimony upon that ground would not be a good exception. See *Stewart v. Stewart*, 41 Wis. 624, 628.

The second exception would seem to be an exception to the evidence, on the ground that the declarations of the husband were not admissible against his widow, and not because the plaintiffs were incompetent to testify as to communications between them and the deceased son. If we should, therefore, strike out of the testimony that part of it which states what the son, Martin, said about having it put in the contract that they should have the $1,500 in case of his death before the death of the plaintiffs, there would still be enough in the evidence of the plaintiffs to show that they understood that the contract should so read; and the evidence of the witness Spiegelberg as to the state-

ments afterwards made by the deceased to him would be sufficient to show that he also understood that such was the understanding as to what the contract should contain. It is true that as against this evidence we have the written contract which, we must suppose, was read to the parties at the time the same was made. Under the circumstances this presumption ought to have but little weight, as the parties were illiterate and knew little or nothing about the English language or its construction. They would naturally trust very much to the supposed superior knowledge of the person drafting the contract, and would conclude that it was drawn according to the intention of the parties and the instructions given.

After reading the evidence, and in view of the character of contracts of this kind, and the uniform disposition of all courts to construe such contracts most favorably so as to carry out the intent of the parties, we are of the opinion that the court should have found that it was agreed by the parties that the mortgage for the $1,500 should become due upon the death of Martin in the life-time of the plaintiffs, as well as in case of his sale of the farm. The very fact that the contract expressly provides that in case the son should sell the farm the $1,500 should become due, shows that it was understood that personal ownership of the farm by the son, and his providing a home for them on the farm, was the great inducement to the parents to enter into the contract, and if the farm should pass out of the possession and ownership of the son, then the contract for support should either cease or at all events should cease at the option of the plaintiffs, and the $1,500 be received in lieu of such support. It is evident that if the plaintiffs had contemplated, at the time the contract was made, what has happened within the ten years next after its execution, they would have undoubtedly made just such provision as they claim was made, or some other equally favorable to

them.   The same results as to their home on the old farm, and the care and presence of their son so as to look after them in their helplessness and old age, that would have followed a sale of the farm and the removal of the son to some other place and entering into some other business, have followed his death; and it is reasonable to suppose that an occurrence of the kind that has happened was considered by the plaintiffs and their son when the contract was made. Contracts of the kind under consideration in this case have always been construed liberally to further the real object of their existence, and the strictness of proofs and, perhaps, of construction which are applicable to mere monetary or business contracts are not to be applied when such strictness of proofs or construction would tend to defeat the manifest object of the contract.   See *Bogie v. Bogie*, 41 Wis. 209, and *Bresnahan v. Bresnahan*, 46 Wis. 389.   Considering the manifest object of the contract under consideration in this case, and the reasonableness of the claim made by the plaintiffs, that the real contract made between the parties was as claimed by them, viz., that in case of the death of their son during the life-time of the plaintiffs the mortgage for $1,500 was to become due, as well as upon a sale of the farm by their son, we think the evidence given by the plaintiffs sufficient to sustain the contention made by them, and that the circuit court should have found that there had been a mistake in drafting the contract, and should have ordered the same reformed, as asked by the plaintiffs.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded to that court with instructions to render a judgment reforming the contract and mortgage as indicated in the opinion, and foreclosing such mortgage for the sum of $1,500 with interest from the death of said Martin Hartstein, and for further proceedings according to law.