Dickson vs. Field.

77  439
78  600
77  439
86  661

DICKSON, Respondent, vs. FIELD, Appellant.
DICKSON, Appellant, vs. FIELD, Respondent.

*September 8 — September 23, 1890.*

*Wills: Construction of devise: Condition for support of devisee's sister: Demand: Waiver.*

1. A devise of a farm to the testator's son, "conditioned said son shall support and maintain my daughter Alice out of said property . . . during her natural life," does not require the daughter to live upon the farm in order to entitle her to such support.

2. Such condition does not require the son to pay a cash annuity to the daughter, but to deliver to her, upon the farm, specific articles necessary to her maintenance.

3. No formal demand was necessary to charge the son with such obligation. His failure to inform the daughter of his readiness to furnish such support puts him in default and renders him liable to pay a cash commutation for past support from the time she became entitled to the same, but does not entitle her to a cash annuity for life.

4. The daughter being married when the devisee came into possession of the farm, her subsequent receipt of maintenance from her husband was a waiver of her right to look to the devisee therefor; but his obligation revived upon her husband's death.

APPEALS from the Circuit Court for *La Fayette* County. The parties are sister and brother. Their father, William Field, late of La Fayette county, died testate in May, 1858, leaving surviving him his widow and eleven children. His estate consisted chiefly of lands in various localities, appraised at $13,345. His personal estate was appraised at $1,569. The estate was indebted in the sum of $862, which was paid out of the proceeds of the personal property. By his last will and testament, William Field devised specific real estate to each of his children, except his daughter *Alice*, the plaintiff. He devised his homestead farm, consisting of 143½ acres, now worth about $45 per acre, to his widow, for life, together with the use of all his personal estate except one horse; and to his son *Silas D.*, the defendant, he devised the same property upon the decease of his widow, " conditioned said son shall support and maintain my daughter *Alice* out of said property, above described, during her natural life."

When their father died, *Alice* was twelve and *Silas* three years old. By reason of an injury which she received when five or six years old, or because of constitutional tendencies, probably both, *Alice* was afflicted with a disease in one of her hips, which resulted in shortening the limb about twelve inches, and rendering her a cripple for life. She resided with her mother on the homstead farm until she was about nineteen years of age, when she left home, and has not resided there since. In 1881, she married one Samuel Dickson, by whom she has two children, one born in 1882, the other in 1886. Dickson died April 22, 1888, leaving a little property, but which is insufficient for the support of his widow.

The widow of William Field occupied the homestead farm until September, 1887, when she died, and *Silas* thereupon went into possession thereof under the will, and has ever

since occupied it as owner. At that time little or none of the personal estate remained.

Prior to the commencement of this action, *Alice* never demanded her support of *Silas*, and he did not, before that time, offer to support her. In his answer, however, he does offer to support her if she will make her home with him on the homestead farm and conduct herself properly. In his testimony, given on the trial, he says: " I am now willing to furnish her a home and support her there on the farm. I have been willing so to do always since mother's death." He also testified that he was not willing to support her children. *Alice* resides at Beetown, in Grant county, and *Silas*, with his wife and children, on the land thus devised to him, which is probably forty or fifty miles from Beetown.

This action was commenced March 22, 1889. It is an equitable action, brought to charge the homestead farm with the support and maintenance of the plaintiff, to compel the defendant to perform the conditions of the devise to him, in her favor, in their father's will. A sale of the land, the appointment of a receiver, etc., is demanded.

The circuit judge substantially found the facts above stated, and also found that the plaintiff is dependent for her maintenance and support upon the above-mentioned provision for her in her father's will, and has been thus dependent since May 1, 1888,— or from about the time her husband died; that an economical estimate of the cost of her maintenance per year, in health, is $200; and that, because of ill feeling manifestly existing between the parties, it is incompatible with her peace and comfort, and her duty as a mother, to reside in defendant's home and receive her maintenance there.

The judge also found, as conclusions of law, that it was and is the duty of defendant to support and maintain the plaintiff from the time she became dependent, and while she

continues so; that it is not a condition of her receiving support and maintenance that she should reside with defendant upon the homestead farm; that the defendant should pay her at the rate of $200 per annum for such support and maintenance from May 1, 1888, to the trial of the action, to wit, December, 1889; that she is entitled to judgment for that amount and costs chargeable upon the homestead farm, and for which execution should be awarded; and that, to prevent a multiplicity of suits, the judgment should direct that the defendant pay to the plaintiff, or to the clerk of the court for her use, from and after December 1, 1889, the sum of $200 per year in quarterly payments of $50 each during the life of the plaintiff — all said sums being also a charge upon the homestead farm — for which the plaintiff may have execution. Also, that the judgment should provide that, in case of failure to pay any of such quarterly instalments, the plaintiff may move, on the foot of such judgment, for further appropriate relief. In case the plaintiff should cease to be dependent upon the provisions of her father's will for her support, it was directed that the judgment provide that the defendant have leave to apply to the court to be released from further payments, but the question whether he would be entitled to such relief is reserved; and further, if by reason of sickness or like disability, the allowance above mentioned shall become inadequate for her maintenance, the plaintiff may in like manner apply to the court to increase it. Judgment was ordered accordingly, and was afterwards entered pursuant to the above conclusions of law.

The defendant appeals from the whole judgment. The plaintiff appeals from that part of it which provides that her allowance shall commence May 1, 1888, instead of September, 1887, when the title to the homestead farm vested in the defendant.

For the plaintiff there was a brief by *Joseph Bock* and *Bushnell & Watkins*, and oral argument by *A. R. Bushnell*.

For the defendant there was a brief by *Orton & Osborn*, and oral argument by *P. A. Orton*.

Lyon, J.  I. The judgment of the circuit court herein, so far as it is adverse to *Silas D. Field*, the defendant, rests upon the propositions (1) that *Alice Dickson*, the plaintiff, is not required to live with *Silas* on the homestead farm to entitle her to the support provided for her in the will of her father; (2) that, although *Alice* did not, before this action was commenced, request *Silas* to support her, yet his failure to do so was a permanent breach of the condition in the will in favor of *Alice* upon which the homestead farm was devised to him, entitling her to demand the cost of her maintenance in cash; (3) that the money value of such support has heretofore been, and while the plaintiff continues in health will continue to be, $200 per annum; and (4) that *Silas* must pay her that sum in cash annually during her life, unless the court shall thereafter relieve him therefrom, and a larger sum should the court so order in case of her sickness or like disability.  Whether these are or are not correct propositions of law are the questions to be determined on the appeal of the defendant.

1. Is the condition of the devise to *Silas* of the homestead farm to be construed as requiring *Alice* to live with him on such farm as a condition precedent to her right to support and the obligation of *Silas* to support her?  The condition of the devise is expressed in the will thus: " Conditioned said son [*Silas D.*] shall support and maintain my daughter *Alice* out of said property, above described, during her natural life."  This clause provides in general terms for the support and maintenance of *Alice* out of the homestead farm, which we understand to mean that the homestead farm shall be charged with her maintenance, and perhaps

Dickson vs. Field.

that she should be supported out of the products thereof, but has no reference to the place where she shall reside. The clause contains no provision requiring *Alice* to live on the land devised to *Silas*, or in his family, or at any other specified place. Neither is there anything in the surrounding circumstances, as they existed when William Field died (in so far as such circumstances are disclosed by the testimony preserved in the bill of exceptions), which will authorize the court to say that he intended any such restriction upon the right of *Alice* to a support out of the farm. We are not informed whether the father thought *Alice* would die young or live to old age, whether she would marry or remain single, or whether she would be a helpless invalid or able to labor and care for herself. His opinion on these subjects is a matter of mere conjecture. Moreover, his devises to all his other children were unconditional and absolute. Why should he impose a restriction, or, rather, why should it be conjectured that he intended a restriction which he did not express, upon the enjoyment by *Alice* of the only provision made for her in his will, except an interest in certain rents, from which she realized $64 only? It could not have escaped his thought that the changing circumstances of his family might, in after years, render it improper that she should reside with *Silas*, and unjust and cruel to require her to do so. To adopt the construction contended for by the learned counsel for the defendant, the court will be compelled to read the sentence "out of said property above described" thus: "Out of *and upon* said property," etc. In view of the plain language of the provision in question, yet at the same time giving due weight to what may reasonably be supposed to have been the intention of the testator, we do not feel authorized to make this interpolation. The provision must be construed, just as it reads, as giving *Alice* the absolute right to her maintenance out of the homestead farm, without restriction as

to the place of her residence.  The learned circuit judge negatived the existence of such restriction.  Of course there is no obligation upon *Silas* to contribute directly or indirectly to the support of the children of *Alice,* and none is claimed.

2. The condition of the devise to *Silas* does not require him to pay *Alice* a cash annuity, or cash sufficient for her maintenance.  Had the testator intended cash payments, he would have expressed such intention in very different language.  It is scarcely controverted, however, that in the first instance *Silas* might have discharged his obligation to *Alice* by delivering to her specific articles necessary to her maintenance, having due regard to the condition in life of the testator and his family when he died.  And it is but reasonable and just to hold that he may deliver the same on the homestead farm, and cannot be required to deliver them elsewhere.

Although *Alice* made no formal demand of such necessaries at the farm or elsewhere, yet, presumably, *Silas* must have known she was living; that her husband was dead; and that he (*Silas*) was under obligations to furnish her the means of support.  He should have informed her of his readiness to do so.  This he failed to do, and his failure puts him in default, and renders him liable to pay a cash commutation for her past support.  *Bogie v. Bogie,* 41 Wis. 209, 220.  The case of *Dodge v. Benedict,* 59 Vt. 651, is cited by counsel for defendant to sustain the opposite doctrine.  It is not in point, because the covenant there under consideration expressly provided the place where the covenantees should be supported, and the covenantor was held not bound to support them elsewhere.  But counsel rely chiefly on *Jenkins v. Stetson,* 9 Allen, 128, to sustain their position.  In that case, the plaintiff covenanted to support one Polly Gurney for life, in consideration of her bond to devise to him certain property.  He supported her on his

own farm seventeen years, when, for the purpose of avoiding her agreement to devise such property to the plaintiff, she left the farm and made a similar agreement with another, to whose wife she devised the property pursuant to such agreement. She died five years later. The plaintiff brought the action against the executor of Polly on her bond. After Polly left the farm he asked her to return but made no offer to and did not support her further. The court held that, under the circumstances of the case, Polly had waived any further support by the plaintiff, and that such failure further to support her was no breach of the plaintiff's covenant in that behalf. Clearly that case is not an authority here. We hold, therefore, that in the present case no formal demand of support was necessary to charge *Silas* with the obligation of performing the condition of the will.

But we are not prepared to hold that such failure puts *Silas* in default during the life of *Alice*, and entitles her to a cash annuity for life. Nothing short of an absolute refusal or neglect to support her, after his obligation to do so and the manner of doing it has been authoritatively adjudicated, should work that result. Hence, we conclude that *Alice* is entitled to recover in this action only the reasonable expenses of her maintenance, from the time hereinafter indicated to the date of the judgment to be hereafter entered.

3. The testimony preserved in the record supports the finding that such reasonable expense amounted to $200 per annum.

4. We think the leave to apply to the court to relieve *Silas* from the payment of the quarterly instalments, or to increase allowances in certain instances, have no proper place in the judgment, and should be omitted therefrom.

It follows that on the appeal of the defendant the judgment in its present form cannot be upheld.

Dickson vs. Field.

II. The appeal of the plaintiff presents the single question whether the obligation of *Silas* to support and maintain *Alice* commenced at his mother's death, in September, 1887, when title to the homestead farm vested in him, or May 1, 1888, which was about the time *Alice's* husband died. The circuit court held it commenced at the latter date. It has already been said that the failure of *Alice* to demand her support did not release *Silas* from his liability to furnish it. But it was competent for *Alice* to waive her right to it, as was held in *Jenkins v. Stetson*, 9 Allen, 128. While her husband lived, it was his duty, under the law, to maintain her. At the same time it was the duty of *Silas* to do so under his father's will. She could elect upon which of them she would cast the burden. She received her maintenance from her husband, and thus elected to look to him for it, instead of *Silas*. This was a waiver by her of the obligation of *Silas* until the death of her husband, which revived the obligation. We think the court did not err in computing the cost of her support from May 1, 1888.

In view of the relationship of the parties, and the manifest difficulty of determining precisely the rights of the plaintiff and the corresponding obligations of the defendant in respect to the kinds and quantities of articles he should furnish for her support, we are constrained to say that there should be no further litigation between these parties over the provisions in the will of their father. *Silas* should inform his sister at once that he will deliver to her, at his homestead farm or some other place they may agree upon, all articles necessary for her support, in suitable quantities, and, if they cannot agree upon such articles and quantities, they will be wise if they submit the controversy to the judgment of discreet mutual friends. It will be better still if they can agree upon a cash annuity in place of the specific necessaries.

The charge upon the estate of *Silas* in favor of *Alice*, cre-

ated by the will of their father, may be a burdensome one. But it was created by the owner of the estate, who had the undoubted right, when he devised it, to impose any lawful charge upon it, even though it might destroy or largely impair the value of the estate of the devisee. The courts are powerless to relieve against it.

*By the Court.*— On the appeal of the plaintiff, the judgment of the circuit court is affirmed. On the appeal of the defendant, such judgment is reversed, and the cause will be remanded with directions to that court to render judgment for the plaintiff as indicated in this opinion.