[No. 31176.   Department Two.   July 11, 1950.]

CHARLES B. GASCH, *Respondent,* v. HAROLD H. COMPTON *et al.,*
*Appellants.*[1]

*J. Will Jones*, for appellants.

*Bryan & Merkel*, for respondent.

[1]Reported in 220 P. (2d) 331.

ROBINSON, J.—This is an action for damages for the alleged breach of an oral contract.

Appellant Lois Compton is the only daughter of respondent, Charles B. Gasch. In 1946, she and her husband purchased certain real property, taking title to it in their name. Mr. Gasch contributed two thousand dollars as a down payment on this property, consideration for the payment being the promise of his daughter and her husband to provide a home for him there. The parties went into possession of the real estate, and respondent continued to live there until September, 1947. Respondent occupied a small cabin adjacent to the main house and took his meals with appellants. For part of the time that he resided on the premises, he paid to appellants the sum of fifty dollars per month for board; for eleven months, however, he paid nothing.

On September 4, 1947, at the instance and request of his daughter, respondent was removed from the property by the King county authorities, for the reason that the daughter had filed a complaint alleging that he was insane. A hearing was later held, and respondent was declared to be sane. He did not return to the property, and was not invited to do so. His daughter sent his personal belongings to the nursing home where he had gone to live. This action was brought to recover the amount of the down payment on the real property. The trial court allowed recovery in the sum of fourteen hundred fifty dollars, this being two thousand dollars less fifty dollars for each of the eleven months during which respondent paid no board. Mr. and Mrs. Compton have appealed.

Appellants do not deny that the agreement was entered into, and they are in substantial agreement with respondent as to the nature of its terms. But they contend that, since it was oral, it did not amount to a valid contract, first, because it involved real estate, and, second, because it was not to be performed within a year.

The first of these contentions need not detain us long. Plainly, this contract was no conveyance of real estate within the meaning of Rem. Rev. Stat., § 10550, for by it no real estate or interest in real estate was conveyed to anyone.

■ Nor was the contract required to be in writing because it might not be performed within a year. It is true that Rem. Rev. Stat., § 5825, provides that agreements not to be performed within one year from the making thereof must be in writing, signed by the party to be charged therewith. But with reference to the specific matter at hand, it is said, in 50 Am. Jur. 871, § 4:

"Since a contract for the support of a person is terminable on his death, which may happen within a year, it is generally held that such a contract is not within the provision of the statute of frauds requiring contracts not to be performed within a year to be in writing, . . ."

■ We agree with the trial court that the principal problem in this case is to determine whether the contract was actually breached. In considering this question, it is important to remember that contracts involving aged or infirm persons, made·in consideration of support and maintenance of such persons by other parties to the contracts, form a class peculiar to themselves in matters pertaining to their interpretation and enforcement. *Hesselgrave v. Mott,* 23 Wn. (2d) 270, 278, 160 P. (2d) 521. In *Payette v. Ferrier,* 20 Wash. 479, 55 Pac. 629, a case wherein a parent had made a deed of certain property to a child in consideration of support and maintenance, the court said:

" 'The conveyances of property by aged and infirm people to their children in consideration of promised support and maintenance, are somewhat peculiar in their character and incidents, and must sometimes be dealt with by the court *on principles not applicable to ordinary conveyances.'* [*Bogie v. Bogie,* 41 Wis. 219.]"

■ With this in mind, we turn to the present case. Appellants filed an insanity complaint against respondent, had him removed from the premises, and, then, after he had been found sane, made no effort whatever to seek him out or to invite him back. It would seem that this course of conduct, considered as a whole, amounted to a breach of their contract to provide him with a place to live. Can it be said that, because respondent made no voluntary effort to return, it should be held that he, and not appellants, had breached the

contract? A contract to furnish support is broken by treating the party who is to receive such support with such harshness that he is unwilling to remain at the house of the adversary party to receive such support. *Tysor v. Adams,* 116 Va. 239, 81 S. E. 76, 51 L. R. A. (N.S.) 1197; 5 Page on the Law of Contracts 5178, § 2936. Mr. Gasch, apparently, felt that the insanity charge made against him was totally unjustified, and it would be unrealistic to say that he should have returned to the house of the people who had brought it and who had been responsible for his forcible eviction in order to petition them to be taken in again.

It is true that the trial court was of the opinion that the Comptons had acted in entire good faith in filing the insanity charge, and the record supports their allegations that, at the very least, respondent was extremely difficult to live with. There was considerable evidence to show that it was respondent's own erratic conduct which precipitated the break between himself and his daughter and son-in-law. We realize that appellants were placed in a difficult position by reason of respondent's mental condition. Nevertheless, it was their contractual obligation to make a home for him. They ask that they now be allowed to retain their property, purchased in part with funds supplied by respondent in consideration that this be done, without being required to reimburse him for his contribution. To permit this, as the trial court suggested, would be to sanction their unjust enrichment.

The trial court refused to hear testimony concerning the cost to appellants of the cabin in which respondent lived. Particularly in view of the fact that appellants retained possession and ownership of the cabin after respondent was evicted, it is difficult to see how such testimony could have been in any way material to the issue, and we think it was quite properly excluded.

The judgment is affirmed.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.